UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURT CONCEPTS, INC., a California corporation,<br><br>                            Plaintiffs,<br><br>v.<br><br>SCOTTSDALE INDEMNITY COMPANY, an Ohio corporation,<br><br>                            Defendant. | Case No.:  18-cv-421-GPC-BGS<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[DKT. NO. 8.]** |

Before the Court is Plaintiff Court Concepts, Inc.'s ("Court Concepts") Motion for Partial Summary Judgment.  Dkt. No. 8.  Plaintiff seeks a declaration from this Court that Defendant Scottsdale Insurance Company[1] ("SIC") owes Plaintiff a duty to defend in *Gamett, et. al v. Dennis Mathis Construction, et al.*, San Diego County Superior Court Case No. 37-2017-00002603-CU-CD-CTL and *QCB Holding LLC, et. al v. Pete Hill Construction Company, et al.*, San Diego County Superior Court Case No. 37-2016-00027195-CU-BC-CTL.  Dkt. No. 8-1 at 1.

---

[1] Defendant asserts that they were erroneously sued as Scottsdale Indemnity Company and that their actual name is Scottsdale Insurance Company. Dkt. No. 10 at 1.

1

Plaintiff filed their motion on April 17, 2018, concurrently with the Declaration of Mark Copeland ("Copeland Decl."), a separate statement of undisputed material facts, and a request for judicial notice. Dkt. No. 8.  On May 9, 2018, SIC filed its opposition, along with a response to Plaintiff's separate statement of undisputed facts, the Declaration of Pamela Still, and the Declaration of David Bold. Dkt. No. 10.  Plaintiff filed their reply on May 23, 2018, with evidentiary objections[2] and a statement of reply to the additional material facts presented by SIC. Dkt. No. 12.

For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment.

## I.      JURISDICTION

This Court has subject matter jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. *See, e.g.*, *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999) (affirming discretionary exercise of jurisdiction over declaratory judgment action brought by insurer against insured based on diversity of citizenship). In this diversity action, the court applies California law to interpret the insurance policy at issue. *See Bell Lavalin, Inc. v. Simcoe & Erie Gen. Ins. Co.*, 61 F.3d 742, 745 (9th Cir. 1995); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325,

---

[2] Plaintiff filed Objections to the Declarations of David Bold and Pamela Still. Dkt. No. 12-1 and 12-2. To the extent that any objected-to-evidence is relevant and relied on by the court herein, the court overrules any asserted objections to that evidence.  *See Brady v. Grendene USA, Inc.*, No. 3:12-CV-0604-GPC-KSC, 2014 WL 5847276, at *6 (S.D. Cal. Nov. 12, 2014).

327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party bears the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict at trial.  *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Where the moving party would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything and summary judgment must be denied.  If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact.  *Id.* at 1102–03.

Under California law, a party may move for partial summary judgment as to the issue of an insurer's duty to defend an insured.  *Transamerica Ins. Co. v. Superior Court*, 29 Cal. App. 4th 1705, 1712-13 (1995).

## III.    REQUESTS FOR JUDICIAL NOTICE

A court may take judicial notice of any fact not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Plaintiff requests that the Court take judicial notice of three publically available documents in support of their motion for partial summary judgment.  These documents include (A) the Second Amended Complaint in *Gamett v. Dennis Mathis Construction*; (B) the First Amended Complaint in *QCB Holdings v. Pete Hill Construction Co.*; and (C) Pete Hill Construction Company's First Amended Cross-Complaint in *QCB Holdings v. Pete Hill Construction Co.*.  As these are court documents filed in the public record, the Court will take judicial notice of these pleadings under Federal Rule of Evid. 201(b).  *See Perkins v. LinkedIn Corporation*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) ("[C]ourt documents already in the public record and documents filed in other courts" are proper subjects of judicial notice); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.2006) (taking judicial notice of pleadings, memoranda, and other court filings).

Defendant requests that the Court take judicial notice of an Agency License Detail computer print-out from the California Department of Insurance website showing the insurer appointments held by agent Scottish American Insurance General Agency, Inc. formerly known as Yates & Associates Insurance Services, Inc..  Dkt. No. 10-4.  The Court has verified that this information is available in the public domain and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.[3]  Accordingly, the Court will also take judicial notice of Defendant's Exhibit 1. *See Abdullah v. U.S. Secur. Assocs., Inc.*, 731 F.3d 952, 959, n. 10 (9th Cir. 2013) (taking judicial notice of California Division of Labor Standards Enforcement opinion letters pursuant to FRE 201(b)).

---

[3] This exhibit is readily accessible on the California Department of Insurance's website at https://interactive.web.insurance.ca.gov/webuser/Licw_Agy_Det$.STARTUP?Z_ORG_ID=9570&Z_AGY_LIC_NBR=0705050.

4

## IV.   BACKGROUND

Court Concepts is a licensed general engineering contractor specializing in construction of game court, playground, softscape, hardscape and recreation area designs, installations and renovations on public and private works projects throughout Southern California.  Copeland Decl. ¶ 3.  In particular, Court Concepts specializes in high-end tennis courts for residential and commercial applications.  *Id.*

### A.   Insurance Policy

Between November 20, 2012 and November 20, 2017, Court Concepts purchased commercial general liability insurance policies to cover its work and to protect it from loss. *Id.* ¶ 8. In November 2012, Plaintiff applied for commercial general liability insurance from Crosby Insurance, Inc., a retail insurance agency which brokered the policy through the wholesale agency Yates & Associates Insurance ("Yates"). Still Decl. ¶ 2.  Yates had an appointment to transact insurance business on behalf of SIC and served as an independent, non-exclusive insurance agent. *Id.*   In its initial insurance application, Plaintiff described the nature of his business and operations as "[g]eneral engineering contractor specializing in recreation construction.  Build/refurbish tennis courts, game courts, playgrounds & parks." Still Decl. ¶ 3; Ex. B.  Yates elected to issue Plaintiff a commercial general liability policy of insurance underwritten and issued by Yates on behalf of SIC under policy number CPS1706324 effective 11/20/12 – 11/20/13.  Still Decl. ¶ 4.  This policy included Endorsement UTS 276s, which was included as a part of SIC's General Contractors – Residential program. *Id.* ¶¶ 5-6.  Moreover, SIC also required Endorsement UTS 306s to be included in the CPS1706324 policy.  *Id.* ¶ 7.

On October 18, 2013, Plaintiff renewed the policy through a retail agency called Patriot Risk and Insurance Services. Still Decl. ¶ 8.  SIC possesses a "Contractors Questionnaire" on "Patriot" letterhead wherein Plaintiff reported to Patriot that none of its work involved new residential construction and 100% of its work was in relation to

remodels. Still Decl. ¶ 9; Ex. C. Further, SIC is in possession of a General Contractors/Developers General Liability Application submitted to Patriot, dated 11/19/13 wherein Plaintiff reported that 50% of its operations involved new construction, with 40% pertaining to residential new construction, and 50% of its operations related to remodeling. Still Decl. ¶ 10; Ex. D.

An SIC commercial liability renewal policy was issued by Yates to Patriot for Plaintiff under SIC's General Contractor program for the policy period November 2013 to November 2014 and included Endorsements UTS-276s and UTS-306s. Still Decl. ¶ 11. This policy was renewed through the general wholesaler to Patriot for the November 2014 to November 2015 period under the Artisan program (Program Code No. 00KJ) and also contained Endorsements UTS-276s and UTS-306s. *Id.* ¶ 12.

Each policy insured Plaintiff for liability arising from its general contractor work. In particular, "Coverage A" provided coverage for claims made against Plaintiff for damages because of "bodily injury" or "property damage" caused by an "occurrence" subject to the limits of liability. Dkt. No. 8-3 at 8-13. Each policy contained Endorsements UTS-276s and UTS-306s which provided exclusions from coverage. *See* Dkt. No. 8-3 at 56, 314.

## B. UTS-276s

Endorsement UTS-276s titled "Development/New Construction Residential Project Exclusion" states in relevant part:

> This insurance does not apply to damages/ "damages" because of "bodily injury," "property damage," "personal and advertising injury" or "error or omission" arising from "your work" on, in connection with or in any way relating to a "residential project."

> However, this exclusion shall not apply to "your work":
> 1. On or in connection with apartment buildings;
> 2. If all work occurs after the single-family or multifamily housing units, townhouses, townhomes, residential condominiums or cooperatives,

6

duplexes or "mixed-use buildings" have been completed, received municipal or governmental certification of occupancy (or equivalent permission to occupy), sold and occupied and your operations or "your work" for repair, remodeling, building addition or expansion is is contracted directly with an individual unit owner, individual homeowner, or contractor working under direct contract with same;

3.  In the following state(s) [If left blank this exclusion applies in all states]:


We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or "suit" excluded by this endorsement.

All other terms and conditions of this policy remain unchanged.

For purposes of this endorsement, the following definitions apply:

"Residential project" means any project involving the original development or original construction of one or more single-family or multi-family housing units, townhouses, townhomes, residential condominiums or co-operatives, duplexes, other structures converted into condominiums or any other type of domicile intended for individual or collective residential ownership, and shall include the original development or original construction of all areas appurtenant to these structures, including but not limited to land acquisition, site improvements, excavation or grading of land, utilities, driveways, walkways, roadways, swimming pools, retaining walls, construction of any other structure, building, or common areas.

"Mixed-use buildings" means structures and improvements thereto, which contain both residential units and commercial

Dkt. No. 8-3 at 56; Still Decl. ¶ 12.

### C.    UTS-306s

Endorsement UTS-306 – Residential Exclusion (Not Including Apartments) provides:

This insurance does not apply, either directly or as assumed by contract, to any lawsuits, actions or other claim for liability for "bodily injury,"

"property damage" or "personal and advertising injury" ("personal injury" or "advertising injury") arising from or in any way relating to the insured's operations or any other involvement in any condominium, townhouse or residential:

   1. Development;
   2. Construction
   3. Reconstruction; or
   4. Renovation

that occurs:
   a. Prior to inception of this policy;
   b. During this policy term; or
   c. Prior to the inception of this policy and that continues into this policy term

Dkt. No. 8-3 at 314.

### D.    GAMETT PROJECT

In August 2013, Court Concepts entered into a contract with James Gamett and Shauna Gamett to provide services related to the construction of a tennis court at the real property owned by these individuals in the city of Encinitas. Copeland Decl. ¶ 10. Court Concepts installed a tennis court outside of the residence. At that time, Court Concepts did not pull a permit for the tennis court pursuant to City of Encinitas rules because it was not a structure. Further, no engineering work was performed for the Court. *Id.* ¶ 11.

In January 20, 2017, James Gamett and Shauna Gamett filed suit in San Diego Superior Court, Case No. 37-2017-00002603-CU-CD-CTL ("Gamett Action") against Dennis Mathis Construction, Inc. and other contractor defendants for (1) Breach of Contract; (2) Negligence; (3) Negligence Per Se; (4) Breach of Express Warranties; and (5) Breach of Implied Warranties. Court Concepts was named as Doe Defendant 76 in the Gamett Action. *See* RJN, Dkt. No. 8-10, Ex. A.

On or about November 30, 2017, Court Concepts tendered the Gamett Action to SIC seeking defense and indemnity under the terms of the Policies. Copeland Decl. ¶ 14. The Gamett Action alleges *inter alia* construction defects and property damage resulting from cracking of the tennis court slab and fence pulling away at the perimeter of the tennis

courts. Copeland Decl. ¶ 15. On or about December 8, 2017, SIC sent correspondence to Court Concepts refusing to defend or indemnify COURT CONCEPTS. Copeland Decl. ¶ 16; Ex. 3. On February 7, 2018, Court Concepts sent correspondence to SIC disputing the basis for the rejection and demanding that SIC defend and indemnify Court Concepts in the Gamett Action. Copeland Decl. ¶ 17; Ex. 4.

### E. QCB PROJECT

In August 2013, Court Concepts also entered into a subcontract agreement with Pete Hill Construction Company, Inc. to provide services related to the construction of a tennis court at real property owned by QCB Holdings, LLC ("QCB") and Zeling Cai in the city of San Diego. Copeland Decl. ¶ 18. Court Concepts construed a tennis court outside this residence. *Id.* ¶ 19. Court Concepts did not pull a permit for the tennis court as none was required and did not submit a plan to the City for the tennis court as none was required. *Id.* ¶ 19. No engineering work was performed. *Id.* On June 30, 2017, QCB and Zeling Cai filed a First Amended Complaint in San Diego Superior Court Case No. 37-2016-00027195-CU-BC-CTL ("QCB Action") against the Pete Hill Construction Company for (1) Violation of the Standards Enumerated Under California Civil Code § 896, et seq.; (2) Breach of Implied Warranties; (3) Breach of Contract; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Common Counts; (6) Open Book Account; (7) Conversion; and (8) Negligence. RJN, Dkt. No. 8-10, Ex. B. On August 18, 2017, Pete Hill Construction Company, Inc. filed a cross-complaint in the QCB Action naming Court Concepts as a cross-defendant. RJN, Dkt. No. 8-10, Ex. C.

Court Concepts timely tendered the QCB Action to SIC seeking defense and indemnity under the Policies. Copeland Decl. ¶ 22. On or about January 2, 2018, SIC sent correspondence to Court Concepts refusing to defend or indemnify Court Concepts in the QCB Action. Copeland Decl. ¶ 23; Ex. 6. On February 7, 2018, Court Concepts sent correspondence to Scottsdale disputing the denial and once again demanding that SIC

indemnify and defend Court Concepts in the QCB Action.  Copeland Decl. ¶ 25; Ex. 7.

# V.  ANALYSIS

Court Concepts argues that it is entitled to partial summary judgment on the duty to defend because (1) there is a potential for policy coverage for its tennis court construction work and (2) the residential exclusions relied upon by SIC are inapplicable to the facts of the case.  Defendant asserts that the residential exclusions clearly and unambiguously exclude coverage for the construction of tennis courts, and, therefore, there is no duty to defend.

## A.  Interpretation of Insurance Policies

Insurance policies are construed under the same rules that govern the interpretation of contracts.  *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*, 111 Cal. App. 4th 1234, 1243 (2003).  Policies are interpreted to "give effect to the mutual intent of the parties at the time of contracting, and such intent is ascertained, if possible, from the clear and explicit language of the contract.  *Id.* (internal citations omitted).  "Coverage provisions are construed broadly in favor of the insured, while exclusion provisions are construed strictly against the insurer. [Citation.]  However, strict construction does not mean strained construction; under the guise of strict construction, we may not rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. [Citation.]" *National Union Fire Ins. Co. v. Lynette C.*, 228 Cal.App.3d 1073, 1077 (1991).  Under California law, "[a]n insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected."  *Smith Kandal Real Estate v. Continental Cas. Co.*, 67 Cal. App. 4th 406, 414 (1998) (citations omitted).

If contractual language is clear and explicit it governs, but when policy language is ambiguous, rules applicable to resolving ambiguity control.  *Id.*  An insurance policy provision is "ambiguous when it is capable of two or more constructions both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyer's Mutual Ins. Co.*, 5 Cal. 4th

854, 867 (1993) (emphasis in original). "In analyzing a policy for uncertainties, the language used must be read in its ordinary sense, according it the meaning which would ordinarily be attached to it by a layman." *NN Investors Life Ins. Co. v. Superior Court*, 208 Cal. App. 3d 1070, 1072 (1989). "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982). "Any doubts, uncertainties, or ambiguities in policy language must be resolved in favor of the insured. However, this principle of construction comes into play only if it is first determined that an ambiguity exists, which is also a question of law." *NN Investors*, 208 Cal. App. 3d at 1072.

The question of whether a duty to defend exists in the insurance context is "generally a question of law." *Transamerica Ins. Co. v. Superior Court*, 29 Cal. App. 4th 1705, 1713 (1994). "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). An insurer's duty to defend arises only where there is potential coverage under the policy. *Marglen Industries, Inc. v. Aetna Casualty & Surety Co.*, 4 Cal.App.4th 414, 422 (1992). Where there is "no possibility of coverage, there is no duty to defend." *Transamerica*, 29 Cal. App. 4th at 1714. California courts resolve any doubts as to the existence of the duty to defend in favor of the insured. *Anthem Electronics, Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). Furthermore, "[a]n insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal 4th 857 (1998). The determination of whether an insured's expectation of coverage is reasonable is a question of law. *Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal.App.3d 1540, 1549 (1989); *Marglen,* 4 Cal. App. 4th at 422.

The initial burden falls on the insured to demonstrate that its claim comes within the

11

scope of basic coverage. *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1215 (Cal. 1998). If that burden is satisfied, the burden shifts to the insurer to show that some exclusion applies. *Id.*

### B. Initial Burden — Potential for Coverage

Court Concepts built a tennis court at the residences of both the Gamett and QCB projects and each lawsuit alleges property damage arising from the construction of the tennis courts. *See* RJN, Dkt. No. 8-10, Ex. A at 15 (Gamett suit alleging "cracking at tennis court slab"); Ex. C at 26 (QCB suit alleging extensive cracks throughout the tennis court surface and "ponding water" resulting from improper sloping of the court surface). Each of the issued policies protect Plaintiff from property damage claims arising from its construction work. As such, Plaintiff has met its prima facie burden to show its claim comes within the scope of basic coverage. *See American Star Ins. Co. v. Insurance Co. of the West*, 232 Cal. App. 3rd 1320, 1325 (1991).

### C. Insurer's Burden — Exclusions

Defendant argues that the plain and unambiguous language of UTS-276s titled "Development/New Construction Residential Project Exclusion" and UTS-306s exclude coverage for claims arising from the construction of tennis courts. The Court addresses these exclusions in turn.

#### 1. UTS-276s

##### a) Ambiguity — "Residential Project"

UTS-276s provides the following exclusion:

> This insurance does not apply to damages/ "damages" because of "bodily injury," "property damage," "personal and advertising injury" or "error or omission" *arising from "your work"* on, in connection with or in any way *relating to a "residential project*." (emphasis added)

Meanwhile, UTS-276s goes on to define "residential project" as follows:

For purposes of this endorsement, the following definitions apply:

*"Residential project" means* any project involving the original development or original construction of one or more single-family or multi-family housing units, townhouses, townhomes, residential condominiums or cooperatives, duplexes, other structures converted into condominiums or any other type of domicile intended for individual or collective residential ownership, and shall include the *original development or original construction of all areas appurtenant to these structures*, *including but not limited to land acquisition, site improvements, excavation or grading of land, utilities, driveways, walkways, roadways, swimming pools, retaining walls, construction of any other structure, building, or common areas*.

Dkt. No. 8-3 at 56 (emphasis added).

UTS-276s excludes coverage for property damage that arises from original development or work on or in any way connected or related to a "residential project." "Residential project" is defined under the policy. To the extent that the exclusion defines the term "residential project," the special meaning controls. *See Alterra Excess and Surplus Insurance Company v. Snyder*, 234 Cal. App. 4th 1390, 1402 (2015) ("Moreover, if the policy's terms are used by the parties in a technical sense or a special meaning is given to them by usage, this use or meaning controls judicial interpretation.") (internal marks omitted).

The definition of "residential project" is "any project involving the original development or original construction" of, *inter alia*, single-family housing units intended for individual or collective residential ownership and includes "original construction of all areas appurtenant to these structures." Dkt. No. 8-3 at 56. Here, the two lawsuits allege that the tennis court construction was related to original construction of housing units owned by individuals. However, Plaintiff interprets this phrase as limiting the exclusion to construction of the living quarters of a residential structure and to those parts of a residence that are specifically identified in the exclusion. Plaintiff's interpretation of "residential" conforms to the dictionary meaning of "residential" which is "Designed for

13

people to live in," oxforddictionaries.com/definition/residential (accessed July 19, 2018) and "Used as a residence or by residents," Merriam-Webster Online Dictionary, http:www.merriam-webster.com/dictionary/residential (accessed July 19, 2018). While Plaintiff argues that the exclusion is inapplicable because a tennis court is not a residential structure, the plain language clearly indicates that the exclusion covers *more* than just residential structures and applies to areas "appurtenant to" the structures. The term "appurtenant" is defined as "appertaining or pertinent; accessory," Collins Online Dictionary, http:www.collinsdictionary.com/us/dictionary/english/appurtenant. Were "appurtenant to" the only definition provided, the Court would conclude that the exclusion is ambiguous as that term, by itself, is subject to more than one reasonable interpretation. *Cf. Sandgren v. Fire Ins. Exch.*, 64 Cal. App. 3d 634, 636 (1976) (if appurtenance was the only characteristic employed in the policy, ambiguity would be self-evident). For clarity, the exclusion provides specific examples to define "appurtenant" as: "including but not limited to land acquisition, site improvements, excavation or grading of land, utilities, driveways, walkways, roadways, swimming pools, retaining walls, construction of any other structure, building, or common areas."

Plaintiff's construction of "all areas appurtenant to" would ignore the phrase "including but not limited to" and limit the exclusion to the examples provided under the definition. However, the use of the word "including," is "ordinarily a term of enlargement rather than limitation." *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969, 981 (citing *Hassan v. Mercy American River Hospital*, 31 Cal. 4th 709, 713 (2003) ("The statutory definition of a thing as 'including' certain things does not necessarily place thereon a meaning limited to the inclusions."). At the same time, the California Court of Appeal has held that the term "include, but need not be limited to" is a "term of expansion," but that the term is not one of "unlimited expansion." *County of Yolo v. Los Rios Community College Dist.*, 5 Cal. App. 4th 1242, 1254 (1992). The term is necessarily

14

limited by the doctrine of *ejusdem generis* such that "where general words relate to the enumeration of specific classes of things, the general words will be construed as applicable only to things of the same general nature or class as those enumerated." *Id. See also Scally v. Pacific Gas & Electric Co.*, 23 Cal. App. 3d 806, 819 (1972) (construing the words "other" or "any other" to include only "others of like kind or character"). Under the principle of *ejusdem generis*, "[p]articular expressions qualify those which are general." *Ortega*, 141 Cal. App. 4th at 981.

Cases applying *ejusdem generis* in the interpretation of statutes have used it as an aid to be used where statutory language is ambiguous. *Moore v. Conliffe*, 7 Cal. 4th 634, 671 (1994) ("The rule of *ejusdem generis* aids in the construction of a statute if there is an ambiguity.") Meanwhile, insurance coverage cases have applied the canon to ascertain whether an ambiguity exists for the purpose of determining whether there is a duty to defend. *See Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969, 986-990 (2006) (applying *ejusdem generis* to find pollution exclusion not ambiguous); *Tsakopoulos v. American Mfrs. Mut. Ins. Co.*, 2003 WL 22595248 (applying *ejusdem generis* to find pollution exclusion ambiguous); *Stone v. Hartford Cas. Co.*, 470 F. Supp. 2d 1088, 1098 (C.D. Cal. 2006) (applying an *ejusdem generis* type analysis to find a duty to defend where professional services exclusion covered additional non-enumerated activities under "includes, but is not limited to" clause); *Atain Specialty Insurance Company v. Szetela*, 2016 WL 1138139, at *6 (E.D. Cal. Mar. 23, 2016) (applying *ejusdem generis* to find no ambiguity and denying a duty to defend). The Court agrees with *Ortega*, *Tsakopoulos*, *Stone*, and *Atain* and finds—as a threshold matter—that the doctrine of *ejusdem generis* is properly applied in determining if there is a duty to defend under an insurance policy.[4]

---

[4] Consequently, the Court disagrees with the proposition—drawn from the California legislative context—that *ejusdem generis* applies only when there is an ambiguity. Finding an ambiguity would

"The proper question is whether a particular phrase is ambiguous in the context of *this* policy and the circumstance of *this* case." *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1056 (2002) (emphasis in original). This question is answered through the eyes of a reasonable person in the position of the insured. *Id.* Under *ejusdem generis*, a general term following the listing of specific classes of things is restricted to those that are of the "same general nature or class" as the specific examples listed. *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999) (citing *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1159 (1991)). This canon of construction "seeks to ascertain common characteristics among things of the same kind, class, or nature." *White*, 21 Cal. 4th at 573.

In applying *ejusdem generis* to insurance coverage issues, the Court looks to decisions that have interpreted "includes but not limited to" and catch-all phrases in deciding whether there is a duty to defend. The court in *Stone v. Hartford Cas. Co.,* 470 F. Supp. 2d. 1088, 1098 (C.D. Cal. 2006) considered a "professional service" exclusion that was expanded with "includes but is not limited to" language. The policy excluded damages due to the failure to render any "professional service" where "[the exclusion] includes but is not limited to: (1) Legal, accounting or advertising services; (2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, design or drawings and specifications; (3) Supervisory, inspection, architectural or engineering activities." *Id*. at 1097-98. The Court

---

necessarily trigger a duty to defend. *See Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 869 (1998) ("An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy."). If the Court accepted the requirement to first find an ambiguity prior to applying *ejusdem generis*, then the Court could *never* apply ejusdem generis in the duty to defend context as the mere application of the canon would indicate the presence of an ambiguity. Consequently, the Court concludes that it may utilize the canon of *ejusdem generis* in interpreting an insurance policy to determine whether an ambiguity exists for purposes of establishing a duty to defend. Otherwise, the Court would necessarily need to conclude that *Ortega*, *Tsakopoulos*, *Stone*, and *Atain* were wrongly decided.

18-cv-421-GPC-BGS

concluded that the "professional services" exclusion "clearly applies to the Stones' claims based on Szucs' professional undertaking to draft plans for room additions, construct and/or supervise construction of the additions, and install a driveway." *Id.* at 1098. There the Court rejected plaintiff's attempt to argue that certain services performed were not specifically identified finding that:

> [Plaintiffs'] further attempt to avoid the "professional services" exclusion by arguing that some of Szucs' services-including measuring and handling windows and shear wall, removing drywall and insulation, and working with electricians and plumbers-are not among those described in the "professional services" exclusions' list of non-covered services. [Plaintiff] ignore[s] the "professional services" exclusion's plain language stating that the scope of the exclusion "*includes, but is not limited to*" the various excluded services listed therein.

*Id.* at 1098 (emphasis added). Accordingly, the *Stone* Court granted summary judgment on the duty to defend in favor of the insurance company. *Id.* at 1099.

Here, similar to *Stone*, the defendant is interpreting an exclusion to cover a category or activity that is not among the list of examples. *Stone* supports the conclusion that a duty to defend can be properly denied based upon application of the "includes, but is not limited to" clause. Similarly, the district court in *Atain* relied on *ejusdem generis* in interpreting a policy exclusion for professional services. The court found that the catch-all phrase "any other service that is of a professional nature" included "pilot car services" where the enumerated examples of professional jobs falling within the exception included "Accountant, Architect, Engineer, Insurance Agent or Broker, Lawyer, Medical Professional or Real Estate Agent Broker." *Atain Specialty Insurance Company v. Szetela*, 2016 WL 1138139, at *6 (E.D. Cal. Mar. 23, 2016). *See also Atain Specialty Ins. Co. v. North Bay Waterproofing, Inc.*, 2013 WL 1819609, at *6 (N.D. Cal. 2013) ("The catch-all phrase 'and other residential or tract housing project' envisions that structures not included in the list of specific examples will nevertheless fall within the scope of the Total

Residential Exclusion.).  Similar to *Szetela*, UTS-276s contains a "catch-all" provision ("construction of any other structure, building, or common areas") triggering an *ejusdem generis* analysis.  Also, like *Stone*, UTS-276s contains "including but not limited to" language that clearly indicates that categories of construction beyond the enumerated examples are intended to be excluded as "areas appurtenant to" the residential structure.

Here, the question is whether the specific examples provided make clear that characteristics of tennis courts are the same in kind, class, or nature as the enumerated exemplars.  In other words, the Court evaluates whether the enumerated examples would clearly indicate to a reasonable person in the position of the insured that original construction[5] of a tennis court is covered as "construction of all areas appurtenant to" a residential structure.

The Court concludes that the construction of a tennis court is of the "same kind, class, or nature" as the enumerated examples.  First, the examples clearly include areas that are outside of the residential portion of the residence, like tennis courts. Second, tennis courts are "installed on grade" and "grading" of land is a specifically identified activity under the exclusion.  *See* Copeland Decl. ¶ 19.  Third, tennis courts are of the same nature as "walkways" in that they both involve the construction of surface areas that are traversed by people.  The CEO of Court Concepts himself compared tennis court construction to sidewalk construction stating that tennis court construction is "installed on grade, similar to sidewalks and patios."  Copeland Decl. ¶ 19.  This statement indicates that the construction of a tennis court—from a construction perspective—is of the same class and nature as activities involved in the construction of a walkway.  Fourth, the construction of

_____

[5] Both the Gamett and QCB projects involved original residential constructions.  Thus, the language excluding from the exclusion work done after the buildings have been completed is inapplicable.  *See* Dkt. No. 8-3 at 56 (exclusion does not apply to work that occurs after the homes have been "completed . . . sold and occupied.").  Instead, the Gamett and QCB projects fit squarely within the exclusion's language of "original development or original construction of all areas appurtenant to these structures." *See* Dkt. No. 8-3 at 56.

a tennis court appears to include at least some work involving utilities as the questionnaire indicated 10% of the firm's subcontracting costs involved electrical subcontracting. Dkt. No. 10-8 at 5. Finally, the enumerated examples specifically include a recreational structure ("swimming pools"). A reasonable insured person—reading "swimming pools" in the enumerated examples—would have realized that large outdoor recreational facilities, like a tennis court, would be part of "all areas appurtenant" to a residential structure.

Applying *ejusdem generis*, the Court concludes that the enumerated examples are a list of outdoor construction activities taking place outside the confines of the residential structure and that construction of a tennis court is unequivocally similar to the types of activities enumerated on that list. *See White*, 21 Cal. 4th at 573 (*ejusdem generis* seeks to "ascertain common characteristics among things of the same kind, class, or nature."). Accordingly, an objectively reasonable person in the position of the insured should have expected that a tennis court would be excluded by the UTS-276s residential exclusion.

In addition, it is clear that Plaintiff's initial application for insurance in November 2012 made no reference to new residential construction. *See* Dkt. No. 10-6 at 1-12. Indeed, the only reference to any "residential" construction is a quote dated 10/19/2012 listing the "Program Type" to be "Gen. Contractors (Residential – *Remodeling*)." Dkt. No. 10-6 at 12 (emphasis added). Plaintiff's SIC policy issued for the period of November 2012 to November 2013 included Endorsement UTS 276s (and UTS 306s discussed below), both of which involve residential exclusions. Still Decl. ¶ 6-7. When Plaintiff filled out a questionnaire in April 2013, Plaintiff reported that he did not perform new residential construction. *See* Dkt. 10-7 at 6 (stating that work contained 0% new construction, 5-20% HOA's, and 60-80% commercial/municipal). Furthermore, Plaintiff wrote in response to the question "In the past 10 years, has, or in the future will, any of your work involve the construction of, or be for custom homes, single family homes, condominiums or townhouses?" that his work involved "Resurfacing only. HOA's yes but very few." Dkt.

No. 10-7 at 8.  This shows that Plaintiff's work in 2012-13—from which the relevant policy containing the residential exclusions was based—involved only residential remodeling work.  It was not until November 2013 that Plaintiff first reported that 40% of his work involved new residential construction.  *See* Dkt. No. 10-7 (listing 40% residential new construction with a hand-written note stating "Residential is Exterior Tennis Courts – No Structures").  Consequently, these facts demonstrate that Plaintiff did not need or seek coverage for new residential projects in his initial 2012 application and subsequent April 2013 questionnaire.  As a result, he was issued a policy containing residential policy exclusions that he chose to renew despite the fact that by late 2013 his workload now contained significant new residential construction.

Furthermore, the Court observes that the policy purchased by Court Concepts included general liability coverage for several types of potential cases *other* than new residential construction.  For example, the policy could potentially cover property damage at one of Court Concepts' commercial or municipal clients.  "While [SIC] assumed the risk of these kinds of losses, [SIC] did not assume the risk of [Court Concepts'] errors and omissions."  *See Stone*, 470 F. Supp. 2d at 1099.  If Court Concepts had wished to ensure liability coverage for its new residential construction, it could have purchased such coverage (likely at a higher premium).

In conclusion, Court Concepts had notice based on the plain language of the UTS 276-s exclusion that any tennis court it constructed on a new residence would be excluded because they are of the same "kind, class, or nature" as the enumerated examples.  Here, even strictly construing the exclusion against the insurer, there is no possibility that an objectively reasonable person in the position of the insured would not have considered tennis courts to involve "construction of all areas appurtenant to" the residential structures.

### b) Objectively Reasonable Expectation

Finally, Plaintiff argues that it had an objectively reasonable expectation that a defense would be provided in these circumstances. Dkt. No. 8 at 22 (citing *Marie Y. v. General Star. Indem. Co.*, 110 Cal. App. 4th 928, 951 (2003)) ("In such a case, whether there is a duty to defend depends upon the language of the insurance contract and whether it created an objectively reasonable expectation on the part of the insured that a defense would be provided in the circumstances.").  Specifically, Plaintiff points to a statement in Court Concepts' Application for Insurance for the period of November 20, 2013 through November 20, 2014 stating that "Residential is Exterior Tennis Courts – No Structures" and argues that this assertion placed SIC on notice that Court Concepts was constructing tennis courts in a residential environment and yet SIC still chose not to explicitly exclude tennis courts from its policies.  Dkt. No. 8-6 at 38, 43.

The Court disagrees and finds that while Plaintiff may have had a subjective expectation that SIC would provide a defense as to these lawsuits, there was no objectively reasonable basis to believe that the policies covered original development tennis courts that were appurtenant to a residence.  As explained above, Plaintiff made no reference to new residential work in the 2012-13 application or April 2013 questionnaire. Clearly, Plaintiff did not seek coverage for new residential projects in the initial 2012 application and subsequent April 2013 questionnaire.  SIC issued a policy containing residential policy exclusions that Court Concepts chose to renew despite the fact that by late 2013 Plaintiff's workload now contained significant new residential construction. Under these circumstances, it was not reasonable for Plaintiff to expect a defense would be provided.

In addition, an insured's "reasonable expectation of coverage is merely an interpretative tool used to resolve an ambiguity once it is found to exist and cannot be relied upon to create an ambiguity where none exists." *California Traditions, Inc. v.*

*Claremont Liability Ins. Co.*, 197 Cal. App. 4th 410, 420-21 (2011) (internal citations and quotation marks omitted). Here, the Court has concluded that no ambiguity in this exclusion exists; therefore the insured's reasonable expectation of coverage cannot be relied upon to create an ambiguity. Moreover, the clarity of the exclusion means that Court Concepts' expectation to the contrary was subjective and unreasonable, and therefore not an objectively reasonable expectation. *See id.* ("[W]hen a policy excludes any potential for coverage, any expectation to the contrary on the part of the insured would have been subjective and unreasonable.") (internal citations omitted).

Accordingly, because UTS-276s expressly and unambiguously excludes "all areas appurtenant to" residential structures and the Court finds that the tennis courts constructed by Court Concepts were part of "all areas appurtenant" to the residential structures, the Court concludes that there is no possibility of coverage under these policies. *See Reserve Insurance Co. v. Pisciotta*, 30 Cal. 3d 800, 809 (1982) ("The insurance company's obligation to provide coverage can be limited only by exclusions phrased in language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."); *Montrose*, 6 Cal. 4th at 300 (a duty to defend does not exist only where the complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage."). Because the moving party Court Concepts has not shown that they are entitled to judgment as a matter of law, the Court will **DENY** Plaintiff's Motion for Partial Summary Judgment[6] requesting that the Court declare that SIC has a duty to defend.

### 2. UTS-306s

While the Court need not reach whether UTS-306s applies given its prior finding, the Court also addresses whether UTS-306s would provide a theory of coverage.

---

[6] SIC has not moved for partial summary judgment on this issue.

Plaintiff asks that the Court adopt an interpretation of the policy language such that "the insured's operations or any other involvement in any other condominium, townhouse, or residential development, construction, reconstruction or renovation" means the insured's operations have to take place inside the structure for the exclusion to apply.

Here, the Court finds that Plaintiff's interpretation is reasonable. Endorsement UTS-306s is ambiguous. Unlike UTS-276s which provided a list of "all areas appurtenant" to the residential structure that were included in the definition of "residential project," UTS-306s does not provide any language defining the outer barriers of what constitutes a "residential development, construction, reconstruction, or renovation." As such, it is not clear that construction of a tennis court constitutes residential construction under UTS-306s and it is reasonable to construe the term as limited to construction of the residential portion of the project. *See Bay Cities Paving & Grading, Inc. v. Lawyer's Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993) ("An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are *reasonable*.") (emphasis in original).

Nevertheless, the ambiguity of UTS-306s does not affect the Court finding that UTS-276s clearly excludes the construction of tennis courts from the policy.

## CONCLUSION

The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment requesting that the Court declare that SIC has a duty to defend Court Concepts in the underlying Gamett and QCB Actions.

**IT IS SO ORDERED.**

Dated: July 25, 2018

Hon. Gonzalo P. Curiel
United States District Judge